**BUSH v. UNITED STATES.**
Civil Action No. 485.

District Court, D. Minnesota, Third Division.
July 17, 1945.

J. Neil Morton, of St. Paul, Minn. (Briggs, Gilbert, Morton & Macartney, of St. Paul, Minn., of counsel), for plaintiff.

Victor E. Anderson, U. S. Atty., and Linus J. Hammond, Asst. U. S. Atty., both of St. Paul, Minn., for defendant.

NORDBYE, District Judge.

The question presented relates to the deductibility in the year 1938 of an alleged bad debt in the sum of $4,200 under Section 23(k) of the Revenue Act of 1936, 26 U.S. C.A. Int.Rev.Acts, page 828. The pertinent facts are as follows: Plaintiff, at the instance of one Mr. Voss, made two loans to a Mr. Hinkhouse; the first loan was in the sum of $1,000 in August, 1937, and the second in the sum of $3,400 on January 4, 1938. Mr. Hinkhouse resided in a neighboring state, and it appears that in August, 1937, he was in dire need of funds. Plaintiff then made a loan to him in the sum of $1,000. In the latter part of December, 1937, Mr. Hinkhouse was again in financial trouble and in urgent need of assistance. A conference was arranged in Chicago between plaintiff, Mr. Hinkhouse and Mr. Voss. Mr. Hinkhouse then told plaintiff that he had been gambling; that his loans in the city where he resided were being called; that his plight was critical; and that if plaintiff would accord him an additional loan in the sum of $3,400, he would be able to meet his outstanding obligations. The loan was made. Mr. Hinkhouse agreed to repay it at the rate of $150 per month. He paid plaintiff $50 on or about February 3, 1938, and a second payment of $150 during the latter part of March, 1938. No other payments were made.

It appears that, by April or May, 1938, Mr. Hinkhouse had become further involved by reason of his gambling proclivities. It then appeared that he owed some $50,000 in the community where he lived and had passed bad checks to the extent of some four of five thousand dollars. He had left his home and job, and disappeared for a week or ten days during which time he wandered about the country. He contemplated suicide, but finally gave himself up to a sheriff in a southern state, believing that he would have to face a charge of cashing checks without sufficient funds. Apparently, no prosecution was instituted, however, and some time during the month of May, 1938, he returned home and was then looking for a position. Later that month or thereabouts, he disappeared from his home and his whereabouts was unknown to this plaintiff. This entire situation was

568

made known to the plaintiff, and on May 19, 1938, after receiving the information related above, he wrote Mr. Voss as follows:

May 19, 1938.

"Personal

"Mr. B. H. Voss:

"I have your note of May 13th, with reference to our mutual friend, Mr. Hinkhouse, and this represents a lesson that I learned some years ago. My only hope was that maybe this would be a different kind of a case. Let's not feel badly about it and let's simply charge it up to experience.

"I believe you have Mr. Hinkhouse's note, as I asked that this matter be handled in your name instead of mine. If you do not have a note, then I wish you would have one made out, using the original date, which was January 4, 1938, and have Mr. Hinkhouse send it to you to be forwarded to me as I need this so I can charge this loan off in my income tax. In that way, I save a little something out of the experience.

"The main thing is, I want you to forget about this matter as far as I am concerned as it was not your doing but strictly my own.

"Yours very truly,<br>"General Sales<br>"A. G. Bush<br>"Vice-President."

The note which he requested was forwarded to him by Mr. Voss on or about May 20th. It was dated January 4, 1938, payable $150 per month, but was due January 4, 1939. Plaintiff contends that, in light of the information received, he determined the loan to be a fixed loss during the year 1938, and contends that he instructed the bookkeeper at the concern of which he was Vice President, who was charged with the duty of preparing his tax returns, to take the Hinkhouse loan as a bad debt deductible in his 1938 income tax returns. However, subsequent to the year 1938 when an audit was made of plaintiff's 1938 tax return by an Internal Revenue agent, he contends that, for the first time, he discovered that the bookkeeper had failed to take the loan as a bad debt for that year's return. He contends that an investigation disclosed that the bookkeeper had placed the file containing the correspondence and the note relating to the Hinkhouse loan in a drawer and that the same had been overlooked. Plaintiff kept no personal books of account

and consequently there was no book or record where the charge-off of the debt would be recorded. He contends, therefore, that, by reason of excusable oversight and neglect, he failed to make claim for the deduction in his 1938 return. On March 13, 1942, a claim for refund was filed, and on June 23, 1943, the claim was disallowed. This suit followed.

In Article 23(k) (1) of Regulations 94, which is explanatory of Section 23(k) of the Revenue Act of 1936, it is stated that a charge-off is proper "if all the surrounding and attendant circumstances indicate that the debt is worthless," and that "where the surrounding circumstances indicate that a debt is worthless and uncollectible and that legal action to enforce payment would in all probability not result in the satisfaction of execution on a judgment, a showing of these facts will be sufficient evidence of the worthlessness of the debt for the purpose of the deduction."

■ As noted in Cammack v. United States, 8 Cir., 113 F.2d 547, 130 A.L.R. 205, the deductibility of a bad debt for any tax year is not dependent on whether the taxpayer keeps books. If he kept no books, the charge-off may be a mental one. Under the circumstances herein, the question as to whether plaintiff actually ascertained and determined that his Hinkhouse loan was worthless in 1938 and whether such determination, if it existed, was founded upon reasonable inferences and information, must be decided upon the particular facts and circumstances surrounding this particular case. In other words, the Court should determine, in light of the situation disclosed, first, whether there was a determination of worthlessness by the taxpayer in 1938, and second, whether such determination was a reasonable conclusion to be drawn from the known facts. It may be stated that there is no dispute that the loan was made under the circumstances related above.

■ The fact that plaintiff did not claim deduction of this alleged bad debt in his 1938 return undoubtedly is evidence that it had not been charged off that year. But such circumstance is not conclusive. Cammack v. United States, supra. As before stated, plaintiff asserts that he determined that the Hinkhouse loan was worthless in the year 1938 and instructed his bookkeeper to claim the loan as a bad debt deduction in the 1938 tax returns. The fact that he took

this note from Hinkhouse after he learned of Hinkhouse's criminal activities and the tremendous gambling losses that he had sustained does not militate against his contention that he had already determined that the loan was worthless. In his letter to Voss, recited above, he indicates that the only purpose in obtaining the note was that he would thereby be armed with some evidence of the loan which would enable him to charge off the debt as worthless and thus "save a little something out of the experience." He knew, of course, that Hinkhouse had lost his job through gambling and financial difficulties; that he owed some $50,000 in the community where he lived and that he had floated bad checks totaling some four or five thousand dollars; that in May, 1938, or thereabouts, he apparently left his family and disappeared. No monthly payments were made on the note after March, 1938. In view, therefore, of all the circumstances disclosed herein, it would not seem that plaintiff had to wait until January 4, 1939, before concluding that the inevitable had taken place. Plaintiff knew the debtor and his background. He knew that the loan was what might be termed a character loan, and that, after Hinkhouse had lost his reputation and standing in the community, the security was gone. It would seem, therefore, that, in light of the undisputed facts, this Court would be unduly presumptuous if it concluded that plaintiff, knowing of these circumstances, had not acted on a reasonable basis in forming a definite conclusion that the loan was worthless. So far as the record indicates, plaintiff knew better than anyone else the hopelessness of recovering anything on the debt. There is nothing in the evidence which suggests any reason for doubting the bona fides of plaintiff's statement with reference to his determination of worthlessness, or to doubt that, in light of the circumstances, a reasonably prudent man would have come to the same conclusion. Certainly, the letter of May 19, 1938, strongly suggests that plaintiff had at that time concluded and determined that the debt was worthless. True, some men rehabilitate themselves and pay their debts after having descended to a lower rung on the ladder than that which seems to have befallen Mr. Hinkhouse. But, under the circumstances, it is the rare exception that a a personal loan of this character is ever repaid. In any event, plaintiff contends that, knowing Mr. Hinkhouse and knowing what occurred, he concluded that the debt was worthless, and there is no suggestion in the evidence or reasonable inference which would support the finding that his judgment in that regard was unwarranted or premature.

What significance, then, shall we attach to his failure to claim the deduction in his 1938 tax returns? That such failure is evidence that he failed to charge off the debt that year seems well established. But if the explanation for the failure is reasonable and honest, any unfavorable inferences should be overcome. Cammack v. United States, supra; City Bank Farmers Trust Co. v. United States, 22 F.Supp. 549, 86 Ct.Cl. 544. It does not appear that he attempted to take the loss during any subsequent year, or that outside of his failure to include the deduction in his 1938 return, he has done anything inconsistent with his claim that he mentally charged off the debt in 1938. The fact that he paid an income tax of over $60,000 in 1938 and that the deduction of the debt in making up his return would have notwithstanding required him to pay a very substantial tax, may to some extent account for his failure to observe the omission. He states that the failure to include the deduction was due to the oversight of the bookkeeper who prepared his return, and that he signed his income tax statement without observing the error. There is no inherent improbability in his story; it has in no way been impeached or attacked. If it is true, and no cogent reason has been suggested why the Court should not accept plaintiff's testimony as true, he should not be refused redress on account of his overpayment.

The recital of the circumstances of the Hinkhouse loan and his apparent disintegration, mentally, financially, and morally, coupled with his disappearance, strongly suggest the reasonableness of plaintiff's statement that, not only did he mentally charge off the indebtedness as worthless, but that the failure to do so in the 1938 return was the result of inadvertence and oversight. Under the circumstances, to find that the uncontradicted testimony of the plaintiff should not be accorded credence seems unwarranted. It follows, therefore, that plaintiff should recover the overpayment in his 1938 tax in the sum of $2,604. It is so ordered.

Findings of fact, conclusions of law and order for judgment are filed herewith. An exception is allowed to the defendant.